UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CALVIN MCKELLER, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00517-JMS-MG |
| | ) | |
| FRANK VANIHEL, | ) | |
| | ) | |
| *Respondent*. | ) | |

**ORDER**

After officials questioned a former corrections officer, who admitted to trafficking contraband, the officer's phone data was downloaded, revealing a phone number and correspondence connected to inmate Petitioner Calvin McKeller. An investigation led Mr. McKeller to be charged with and convicted of attempting to traffic, resulting in a loss of 90 days of good-time credit and a demotion in one level of credit-earning class. Mr. McKeller challenges the lawfulness of his conviction and has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] For the reasons explained below, the disciplinary proceeding did not violate Mr. McKeller's due process rights. His habeas petition is **DENIED**.

**I.**
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent,*

1

*Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.
### Factual Background

On February 6, 2023, an Investigation Report was completed, detailing an effort to traffic contraband into the Wabash Valley Correctional Facility. [Filing No. 9-2 at 1.] The Investigation Report states as follows:

> On 01/23/2023, at Wabash Valley Correctional Facility (WVCF), Correctional Officer Elizabeth Moyer was arrested for admitting, while under Miranda, to trafficking contrabands into WVCF. Elizabeth's cellphone was downloaded, retaining information for her crimes. In researching the information gained from her phone (Elizabeth consented to the warrant less search of her phone), it was found that Elizabeth had met a civilian with phone number [XXX-XXX-XXXX] to obtain contraband. The only Incarcerated Individual (I.I) at WVCF that had that phone number on their approved list is McKeller, Calvin #989262. Elizabeth and the civilian start a text conversation on 01/04/2023. During the text conversation they discussed meeting at an address in Brazil, [Indiana,] with the civilian describing their vehicle. The conversation leads a reasonable person to believe they met to pass something. Again beginning on 01/07/2023, they discuss "items", talking about dropping the "items" off. Eventually discussing meeting in Lewis, which is where Elizabeth admitted to meeting a civilian and obtaining contraband, to include[] what she believed was marijuana. The civilian texted that they were coming to WVCF to visit "MOB/CAL." It is known that McKeller's known monikers are "MOB/CAL".

[Filing No. 9-2 at 1.]

Based on that investigation, Officer T. Davis drafted a Conduct Report charging Mr. McKeller with offense A-111/113, "Conspiracy/Attempting/Aiding or Abetting to Traffic." [Filing No. 9-1 at 1.] The Disciplinary Code for Adult Offenders defines conspiracy as "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." [Filing No. 9-12 at 2.] Trafficking is defined as "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an

2

unauthorized physical object from another person without the prior authorization of the facility warden or designee." [Filing No. 9-12 at 2.]

When Mr. McKeller was screened, he stated he was "not the only person in this facility with that phone number" and did not request any physical evidence. [Filing No. 9-4 at 1.] Later, Mr. McKeller requested that his hearing be continued "so [he] can get proper evidence to this case. [He] would like . . . records to prove [he was] never . . . around the [correctional officer] or the other incarcerated individuals at all[,] or" at least for the evidence to be made available to the hearing officer. [Filing No. 9-5 at 1.]

At the disciplinary hearing, Mr. McKeller again asked that the hearing be continued, for the hearing officer to "check the roll call log sheets for" correctional officers to prove he was never around the offending officer, and for records showing that he resided on another side of the prison such that he would not have come into contact with the officer, and that he never had any phone calls with the officer. [Filing No. 9-7 at 1-2.] He also stated that another individual had the suspicious phone number on their approved phone list, and that the phone number actually belonged to the other incarcerated individual's sister. [Filing No. 9-7 at 2.] The hearing officer denied Mr. McKeller's request, but nonetheless considered his statement and compared it to the Investigation Report, which was taken as "true and accurate." [Filing No. 9-6 at 1.] Mr. McKeller was convicted, and his custodial punishments included a deprivation of 90 days of good-time credit and a demotion in one level of credit-earning class. [Filing No. 9-6 at 1.]

Mr. McKeller appealed to the warden and later the final reviewing authority, but both times, he was denied. [Filing No. 9-9; Filing No. 9-10.] He has now filed a Petition for a Writ of Habeas Corpus in this Court, seeking relief from his disciplinary conviction. [Filing No. 1.]

## III.
### DISCUSSION

Mr. McKeller makes two arguments: 1) that he was denied his right to present evidence and 2) that he was denied the right to an impartial decisionmaker. The Court considers each argument below.

### A.     Right to Present Evidence

Mr. McKeller argues that he was denied the opportunity to present evidence in his favor. [Filing No. 2 at 2.] He states that he asked for two pieces of evidence: 1) "[t]he officer sign in sheet in order to prove that the female officer involved with the investigation never worked on the unit [he] was housed in or was . . . ever around [him]," and 2) "[t]he offender bed roster to prove [he] was housed on the right wing of P-house in the entirety of the time that the alleged offense was taking place." [Filing No. 2 at 2.] He states that he was entitled to receive and present that evidence under prison policy. [Filing No. 2 at 2-3.]

The Respondent argues that Mr. McKeller was not denied relevant evidence. [Filing No. 9 at 8.] He states that the offense of attempting to traffic is complete "when the attempt is made, or the conspiracy is hatched. There need not be an actual transfer of possession of the contraband." [Filing No. 9 at 10.] The Respondent avers that the contraband could have been intended for another person, with Mr. McKeller being a "pusher" intermediary. [Filing No. 9 at 10.] Consequently, the Respondent argues, contact with another officer was "irrelevant." [Filing No. 9 at 10.]

Mr. McKeller replies that the roll call sheet and offender bed list would have proven that the officer "involved with the conduct report was never around [him] in the housing unit [he] was housed in." [Filing No. 14 at 3.] He argues it would also have shown he "had no reasonable opportunity to conspire . . . with anyone mentioned in the Conduct Report." [Filing No. 14 at 4.]

4

He argues that his rights were violated when he was denied a continuance to gather that evidence, citing to prison policy. [Filing No. 14 at 6.]

An inmate "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). It is relatively easy for the respondent to show that the justification for withholding evidence is adequate. *See Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) ("[W]e have had no trouble approving of non-disclosure [of video evidence] where prison officials have asserted a bona fide security justification, for example, that if the inmate were permitted to watch the tape, he might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future.").

A prisoner is not entitled to access to materials where there are bona fide security concerns. [Filing No. 9 at 12 (citing *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003).] Knowing the whereabouts of officers and offenders in the prison could be used to facilitate criminal activity. Nonetheless, when prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie*, 344 F.3d at 679). The Respondent has submitted *ex parte* its internal Report of Investigation underlying the Conduct Report. [Filing No. 11.] The Court has reviewed it and determined that it is not exculpatory and is instead consistent with the allegations of the Conduct Report.

Even assuming Mr. McKeller resided in a different wing of the prison and never met the offending officer, telecommunications technology enables plans to be made without meeting in

person. An admittedly co-conspiring officer provided text messages showing someone planning to visit "MOB/CAL" in prison – Mr. McKeller's apparently known moniker – and those text messages came from a phone number that the prison states was on Mr. McKeller's approved call list. Attempting to traffic contraband does not require the literal presence of any individual; hatching the scheme is enough. Consequently, the officer roll-call sheet and offender bed list were neither exculpatory nor relevant. "[P]risoners do not have the right" to evidence that is "irrelevant, repetitive, or unnecessary," so wasting time continuing the hearing to find such evidence was not required. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

Mr. McKeller states that he was entitled to that evidence under prison policy, but prison policies are "primarily designed to guide correctional officials in the administration of a prison" and do not "confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process").

Mr. McKeller is not entitled to habeas relief on the ground that he was unlawfully denied an opportunity to present evidence.

  **B.**  **Right to an Impartial Decisionmaker**

Mr. McKeller argues that he did not have an impartial decisionmaker because he asked the hearing officer for a continuance "due to not having the evidence [he] requested at [his] screening hearing," which included the officer sign-in sheet and the offender bed roster. [Filing No. 2 at 5.]

The Respondent argues that the hearing officer "was not partial." [Filing No. 9 at 12.] The Respondent states that it is not error to deny a request or evidence that is irrelevant. [Filing No. 9

6

at 12.] Additionally, the Respondent states that there is a "compelling, security-based reason for denying the staff roster," because an incarcerated individual could "determin[e] . . . staff shortages," and other movements of staff to facilitate criminal activity. [Filing No. 9 at 12.] The Respondent states that in any event, hearing officers are entitled to "a presumption of honesty and integrity," and Mr. McKeller provides no evidence that the hearing officer was ever "involved in the incident" and that the "crux" of Mr. McKeller's claim is only that the hearing officer decided against him. [Filing No. 9 at 12.]

Mr. McKeller replies that he was denied the "right to a fair hearing before impartial decision makers" because "there is no justifiable way [he] should have been found guilty of the Conduct Report." [Filing No. 14 at 13.] His conviction itself, he insists, "proves [the] disciplinary hearing officer . . . was partial to the internal investigation unit and not impartial" to him. [Filing No. 14 at 13.]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. McKeller's only argument appears to be that because the hearing officer decided against him, the hearing officer must have been unlawfully biased. But the hearing officer's decision considered the available evidence, including Mr. McKeller's testimony and an extensive investigation in which the hearing officer did not personally take part. Any accusation of partiality is meritless.

Mr. McKeller is not entitled to habeas relief on the ground that the decisionmaker was not impartial.[1]

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Petitioner to the relief he seeks. Accordingly, Mr. McKeller's Petition for a Writ of Habeas Corpus is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

Date: 1/2/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[1] Mr. McKeller makes additional arguments in his Reply, including that he did not have sufficient notice to prepare a defense without the evidence against him or the specific elements of the offense, such that he was "blindsided." [Filing No. 14 at 9.] These arguments were not included in his Petition and are accordingly waived. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) (holding that "arguments raised for the first time in a reply brief are waived").

Distribution:

CALVIN MCKELLER
989262
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant  - Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov